ACCEPTED
03-15-00293-CV
7003472
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/18/2015 6:53:21 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00293-CV

In the Court of Appeals
For the Third Judicial District of Texas
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/18/2015 6:53:21 PM
JEFFREY D. KYLE
Clerk

BOB E. WOODY,
Plaintiff-Appellant,

v.

J. BLACK'S, LP and J. BLACK'S, GP, LLC,
Defendants-Appellees.

On Appeal from Cause No. D-1-GN-09-001436
In the 345th Judicial District Court of Travis County, Texas
The Honorable Steven Yelenosky Presiding

## BRIEF OF APPELLANT BOB E. WOODY

Jeremy Gaston
HAWASH MEADE GASTON
NEESE & CICACK LLP
2118 Smith Street
Houston, Texas  77002

Rick Gray
GRAY & BECKER, PC
900 West Avenue
Austin, TX  78701-2210

Tom C. McCall
David B. McCall
THE MCCALL FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759

Hector H. Cardenas, Jr.
THE CARDENAS LAW FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759

*Counsel for Appellant*

**ORAL ARGUMENT REQUESTED**

**Appellant**

Bob E. Woody

**Counsel for Appellant**

Jeremy Gaston
Texas SBN 24012685
jgaston@hmgnc.com
HAWASH MEADE GASTON NEESE & CICACK LLP
2118 Smith Street
Houston, Texas 77002
Telephone: (713) 658-9001
Facsimile: (713) 658-9011

Rick Gray
Texas SBN 08328300
rick.gray@graybecker.com
GRAY & BECKER, PC
900 West Avenue
Austin, TX 78701-2210
Telephone: (512) 482-0061
Facsimile: (512) 482-0924

Tom C. McCall
Texas SBN 13350300
tmccall@themccallfirm.com
David B. McCall
Texas SBN 13344500
dmccall@themccallfirm.com
THE MCCALL FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759
Telephone: (512) 477-4242
Facsimile: (512) 477-2271

Hector H. Cardenas, Jr.
Texas SBN 00790422
hcardenas@cardenas-law.com
THE CARDENAS LAW FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759
Telephone: (512) 477-4242
Facsimile: (512) 477-2271

**Appellees**

J. Black's, LP
J. Black's GP, LLC

**Counsel for Appellees**

Mr. Eric J. Taube
Andrew Vickers
Taube Summers Harrison Taylor Meinzer Brown, LLP
100 Congress Avenue, 18th Floor
Austin, Texas  78701

**Presiding District Court Judge**

The Honorable Stephen Yelenosky
354th District Court
P.O. Box 1748
Austin, Texas  78767
Telephone:  (512) 854-9374
Facsimile:   (512) 854-4540

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ....................................................................... i

TABLE OF CONTENTS ........................................................................................... iii

INDEX OF AUTHORITIES......................................................................................... v

STATEMENT ON ORAL ARGUMENT ....................................................................... ix

STATEMENT OF THE CASE ....................................................................................x

STATEMENT OF ISSUES ....................................................................................... xi

STATEMENT OF FACTS .........................................................................................1

A.   Factual History.........................................................................................1

B.   Procedural History ...................................................................................3

    1.   Initial Trial Court Proceedings .................................................3

    2.   First Appeal ...............................................................................5

    3.   Remand after Appeal ................................................................6

STANDARDS OF REVIEW .....................................................................................10

SUMMARY OF ARGUMENT ..................................................................................11

ARGUMENT .......................................................................................................14

I.   Principles of Specific Performance .......................................................14

II.   The trial court erred in granting summary judgment for J. Black's and not for Woody on J. Black's claim for specific performance. .........................19

    A.   Woody never actually breached any performance obligation.................19

    B.   J. Black's submitted no admissible evidence—let alone conclusive evidence—that it was ready, willing, and able to perform. ...................25

    C.   The trial court's determination that damages would be an inadequate remedy should be reversed..............................................27

        1.   J. Black's submitted no evidence—let alone conclusive evidence—that damages would be an inadequate remedy. ............27

iii

2. J. Black's did not move for summary judgment on this element. ..................................................................28

D. The trial court's award of specific performance is improper because it is not based on a breach associated with any present performance obligation. .......................................................29

E. An order of specific performance must compel performance by both parties........................................................................34

III. The district court erred in awarding attorney's fees, interest, and costs to J. Blacks. .........................................................................35

A. The basis for the award – specific performance – was improper............35

B. Even if specific performance were available, J. Black's would not be entitled to attorney's fees because it obtained nothing of value and/or because it obtained no award of damages. ...................35

CERTIFICATE OF COMPLIANCE ................................................................38

CERTIFICATE OF SERVICE.........................................................................39

iv

INDEX OF AUTHORITIES

*Cases*

*Am. Hous. Res., Inc. v. Slaughter,*
597 S.W.2d 13 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) .........................33

*Ashford Partners, Ltd. v. ECO Res., Inc.,*
401 S.W.3d 35 (Tex. 2012).......................................................................................35

*Atl. Richfield Co. v. Long Trusts,*
860 S.W.2d 439 (Tex. App.—Texarkana 1993)......................................................11

*Beckham v. Munger Oil & Cotton Co.,*
185 S.W. 991 (Tex. Civ. App.–Dallas 1916, no writ) ...........................................33

*Boyaki v. John M. O'Quinn & Associates, PLLC,*
01-12-00984-CV, 2014 WL 4855021 (Tex. App.—Houston [1st Dist.]
Sept. 30, 2014, pet. filed) .........................................................................................36

*Cytogenix, Inc. v. Waldroff,*
213 S.W.3d 479 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).... 15, 27, 32

*Delgado v. Methodist Hospital,*
936 S.W.2d 479 (Tex. App.—Houston [14th Dist], no pet.)...............................21

*Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,*
835 S.W.2d 75 (Tex. 1992).......................................................................................24

*DiGuiseppe v. Lawler,*
269 S.W.3d 588 (Tex. 2008)....................................................................................15

*Galbreath v. Farrell,*
249 S.W. 277 (Tex. Civ. App.—Dallas 1923, no writ) .............................. 15, 34

*Gasparotto v. Gallagher Power Fence, Inc.,*
No. 03-03-00383-CV, 2004 WL 101689
(Tex. App.—Austin Jan. 23, 2004, no pet.) (mem. op.) .....................................23

*Gereb v. Smith-Jaye,*
70 S.W.3d 272 (Tex. App.—San Antonio 2002, no pet.)...................................11

*Green Int., Inc. v. Solis,*
951 S.W.2d 384 (Tex. 1997)....................................................................................35

*Greenwall Theatrical Circuit Co. v. Markowitz,*
97 Tex. 479, 79 S.W. 1069 (1904)...........................................................................16

*Griffin's Estate v. Sumner,*
604 S.W.2d 221 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.) ...........32

*Hegar v. Ryan, LLC*,
   No. 03-13-00400-CV, 2015 WL 3393917 (Tex. App.—Austin May 20, 2015,
   no. pet. h.)..................................................................................................31

*Haubold v. Med. Carbon Research Inst., LLC*,
   03-11-00115-CV, 2014 WL 1018008 (Tex. App.—Austin Mar. 14, 2014, no
   pet.)............................................................................................................35

*Haynes v. City of Beaumont*,
   35 S.W.3d 166 (Tex. App.—Texarkana 2000, no pet.) ......................................26

*Holmes v. P.K. Pipe & Tubing, Inc.*,
   856 S.W.2d 530 (Tex. App.—Houston [1st Dist.] 1993, no writ)................. 20-21

*Hudson v. Wakefield*,
   711 S.W.2d 628 (Tex. 1986) ...........................................................................9

*First State Bank of Bishop v. Grebe*,
   162 S.W.2d 165 (Tex. Civ. App.—San Antonio 1942, writ ref'd w.o.m.)............9

*Humphrey v. Showalter*,
   283 S.W.2d 91 (Tex. Civ. App.—Eastland 1955, writ ref'd n.r.e.)....................16

*In re Ferguson*,
   445 S.W.3d 270 (Tex. App.—Houston [1st Dist.] 2013) (orig. proceeding) ......11

*Ingersoll-Rand Co. v. Valero Energy Corp.*,
   997 S.W.2d 203 (Tex. 1999),
   *on reh'g in part*, 997 S.W.2d 203 (Tex. Aug. 26, 1999) ....................................16

*Lone Star Salt Co. v. Texas Short Line Ry. Co.*,
   99 Tex. 434, 90 S.W. 863 (1906)....................................................................28

*M.D. Anderson Hosp. and Tumor Institute v. Willrich*,
   28 S.W.3d 22 (Tex. 2001) (per curiam) ...........................................................10

*MBM Financial Corp. v. Woodlands Operating Co., LP*,
   292 S.W.3d 660 (Tex. 2009).............................................................................35

*Oram v. General Am. Oil Co. of Texas*,
   513 S.W.2d 533 (Tex. 1974).............................................................................10

*Paciwest, Inc. v. Warner Alan Properties, LLC*,
   266 S.W.3d 559 (Tex. App.—Fort Worth 2008, pet. denied) ............................14

*Polansky v. Berenji*,
   393 S.W.3d 362 (Tex. App.—Austin 2012, no pet.) .................................. 18, 25

*Provident Life and Acc. Ins. Co. v. Knott*,
   128 S.W.3d 211 (Tex. 2003)...........................................................................10

*Prudential Ins. Co. of Am., Inc. v. Black,*
572 S.W.2d 379 (Tex. Civ. App.—Houston [14th Dist.] 1978) .........................26

*Roberts v. Southwest Texas Methodist Hosp.,*
811 S.W.2d 141 (Tex. App.—San Antonio 1991, writ denied) .......................... 29

*Ryland Group, Inc. v. Hood,*
924 S.W.2d 120 (Tex. 1996) ...............................................................26

*S. Plains Switching, Ltd. Co. v. BNSF Ry. Co.,*
255 S.W.3d 690 (Tex. App.—Amarillo 2008, pet. denied) ......................... 32, 33

*Shilling v. Gough,*
393 S.W.3d 555 (Tex. App.—Dallas 2013, no pet.)..............................................11

*Syndex Corp. v. Dean,*
820 S.W.2d 869 (Tex. App.—Austin 1991, writ denied) ....................................11

*Texas Worker's Compensation Com'n v. Patient Advocates of Texas,*
136 S.W.3d 643 (Tex. 2004) ...............................................................10

*Thomas v. Thomas,*
902 S.W.2d 621 (Tex. App.—Austin 1995, writ denied) ....................................16

*United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.,*
493 S.W.2d 882 (Tex. Civ. App.—Fort
Worth 1973, no writ) ................................................... 14-15, 27-28, 33-34

*Valence Operating Co. v. Dorsett,*
164 S.W.3d 656 (Tex. 2005) ...............................................................10

*Woody v. J. Black's, L.P.,*
No. 07-12-00192-CV,
2013 WL 5744359 (Tex. App.—Amarillo Oct. 18, 2013) ............................... xi, 5-6

**Rules and Statutes**

TEX. CIV. PRAC. & REM. CODE § 38.001....................................................... 13, 14, 35

TEX. R. APP. P. 9.4 ................................................................................38

TEX. R. CIV. P. 166a ..............................................................................10

TEX. R. EVID. 401 ................................................................................26

TEX. R. EVID. 402 ................................................................................26

TEX. R. EVID. 802 ................................................................................26

TEX. R. EVID. 1002 ..............................................................................26

## REFERENCES TO THE CLERK'S RECORDS

In May and July 2015, three clerk's record volumes were filed with this Court. However, they are hard to distinguish because each says "Volume 1 of 1" at the top. As such, the best way to keep track of them is by the *earliest* date shown on their covers. In particular, one was first delivered to this Court on February 7, 20**11**; another was first delivered to this Court on May 21, 20**12**; and the third was first delivered to this Court on July 16, 20**15**. Thus, these clerk's records will be cited by the last two digits of the year they were first filed:

11CR*x*    Page *x* of the Clerk's Record first delivered February 7, 2011.

12CR*x*    Page *x* of the Clerk's Record first delivered May 21, 2012.

15CR*x*    Page *x* of the Clerk's Record first delivered July 16, 2015.

## OTHER RECORD REFERENCES

RR*x* (*date*)    Reporter's Record of *date*, page *x*

App. *x*    Appendix Tab *x*

## STATEMENT ON ORAL ARGUMENT

Given the lengthy procedural history of this case, including a prior appeal heard by another court of appeals, appellant believes oral argument would materially assist this Court's decisional process.

## STATEMENT OF THE CASE

**Nature of the Case:** This is a commercial landlord-tenant dispute.

**Course of Proceedings:** Appellant Bob E. Woody filed suit against his sublessee (appellee J. Black's, LP), claiming that J. Black's breached the parties' sublease and that the sublease would soon terminate because it had not been properly extended. 11CR8-78. In response, J. Black's claimed that Woody had breached the sublease by "refusing to acknowledge" J. Black's extension of the sublease, by demanding that J. Black's vacate the premises or pay holdover rent, and by alleging nonexistent defaults. 11CR91, 88-93, 5-10.

On summary judgment, the trial court held that Woody had breached the sublease (11CR97-123, 491-92) and that J. Black's had not breached the sublease or committed any associated torts (11CR497-647, 711, 949; 15CR636). The court then entered judgment awarding J. Black's specific performance of the sublease extension and attorney's fees. 11CR1160-61, 1302-03.

On appeal, the case was transferred to the Amarillo Court of Appeals, which held that J. Black's had properly extended the sublease, but that the trial court erred in granting specific performance because J. Black's had not conclusively shown it was ready, willing, and able to perform. *See* App. 1 (*Woody v. J. Black's, L.P*., No. 07-12-00192-CV, 2013 WL 5744359, at *6 (Tex. App.— Amarillo Oct. 18, 2013)). The Court, without addressing Woody's other arguments against specific performance, then remanded for further proceedings. *Id*. at *9.

**Trial Court:** 354th District Court (Honorable Stephen Yelenosky, presiding).

**Trial Court's Disposition:** On remand, the trial court entered summary judgment that J. Black's was entitled to specific performance of the parties' sublease, $173,438.85 in attorney's fees, $20-40,000 in conditional appellate attorney's fees, post-judgment interest, and costs. App. 2 (15CR1652-53).

x

## STATEMENT OF ISSUES

1. Did the trial court err in granting summary judgment for J. Black's and not for Woody on J. Black's request for specific performance?

2. Did the trial court abuse its discretion and commit harmful error in excluding certain of Woody's summary judgment evidence and failing to exclude certain of J. Black's summary judgment evidence?

3. Did the trial court err in awarding J. Black's attorney's fees, interest, and costs?

## A. Factual History

On August 21, 2006, appellant Bob E. Woody subleased the first floor of 710 W. Sixth Street in Austin, Texas to J. Black's, LP for use as a bar and restaurant. 15CR927. The initial term of the sublease was 36 months beginning September 1, 2006. *Id.*; 15CR924 ¶ 3. Under the sublease, J. Black's had an option to extend the term by three years and could do so up to four times, so long as J. Black's was not in default and gave timely written notice of its intent to extend the term. *Id.*

In particular, to extend the original term by three years, J. Black's had to give written notice to Woody by March 4, 2009 by personal delivery or certified mail. 11CR21 Art. 3.01. On February 23, 2009, J. Black's sent such notice by certified mail, return receipt requested, but Woody did not receive it. 11CR162-69, 184 ¶ 14, 427-33, 286-289 This led to a dispute between the parties as to whether J. Black's had timely exercised its option.

The parties also disputed whether J. Black's was in default under the sublease. In particular, at some point during or before 2009, J. Black's connected three gas heaters to the property—and to Woody's gas meter—without a city permit or Woody's authorization, thus resulting in $11,951.83 in unauthorized gas charges that were billed to Woody. 11CR59-70, 146-47. In addition, the parties disputed whether the gas heaters, once attached to the property, became a "fixture" or "improvement" that no longer belonged to J. Black's under the sublease. 11CR11, 177-178. During the pendency of these disputes, J. Black's removed the heaters and

1

refused to return them, although it did repay Woody for the gas. 11CR279, 282, 505-06. The parties also disputed whether J. Black's was in default for failure to provide food service as required under the sublease. 11CR144-45.

Based on the above events, including the fact that Woody did not receive J. Black's certified notice of its intent to exercise its first extension option, Woody told J. Black's that it would have to leave the premises by midnight on August 31, 2009. 11CR158-59. J. Black's ignored Woody and stayed in the premises, where it remains today. 15CR925 ¶¶ 5-7; 15CR1271.

On May 5, 2009, Woody sued J. Black's for conversion, theft, trespass to personal property, and breach of contract, seeking damages and injunctive relief. 11CR8, 14. The district court issued a temporary restraining order, restraining J. Black's from removing any fixtures/improvements, interfering with Woody's utilities, or interfering with Woody's own access to the property (which included a separate restaurant/bar run by Woody). 11CR8-87; RR1-11 (May 6, 2009). After a hearing on May 14, 2009, the district court denied Woody's request for a temporary injunction with respect to the gas heaters removed by J. Black's from the premises. 11CR 95, 243-343; RR99 (May 13, 2009).

J. Black's then filed an answer and counterclaim, which alleged that Woody had committed fraud (in connection with the gas heater claims) and that Woody had breached the sublease by alleging nonexistent defaults, refusing to acknowledge J. Black's extension of the sublease, and demanding that J. Black's vacate the premises by August 31, 2009. 11CR88-93. J. Black's requested specific performance of the

2

sublease, or alternatively, damages and attorney's fees. 11CR89-92. On October 15, 2009, Woody demanded that J. Black's pay delinquent holdover rent and late fees, 11CR172-73, but J. Black's ignored Woody's demands.

Since the sublease began (September 1, 2006), Woody never locked J. Black's out of the premises; never initiated any eviction proceedings; and never prevented J. Black's from conducting its business there. 15CR925 ¶¶ 5-6. Accordingly, J. Black's has remained in continuous physical possession of the subleased premises since the sublease started (September 1, 2006) through the present.

## B.     Procedural History

### 1.     *Initial Trial Court Proceedings*

On November 20, 2009, J. Black's moved for partial summary judgment that Woody had breached the sublease by refusing to acknowledge J. Black's sublease extension. 11CR97-173, 106. On December 17, 2009, the trial court granted J. Black's first motion for partial summary judgment.[1] 11CR492.

On August 27, 2010, J. Black's filed a second motion for partial summary judgment, seeking, among other things, dismissal of Woody's claims for breach of contract, conversion, trespass to personal property, and theft. 11CR497-651. On

---

[1] In the motion's introduction, J. Black's stated that it "seeks partial summary judgment on its breach of contract counterclaim, which alleges in part that Woody has breached the Sublease by refusing to acknowledge the extension of the term of the Sublease and by demanding holdover rent." 11CR98. However, J. Black's made no argument in the motion that Woody's request for holdover rent breached any contractual obligation and in the motion's conclusion/prayer, J. Black's specifically stated only that it sought "partial, summary judgment that Woody has breached the Sublease agreement by refusing to acknowledge J. Black's extension of the Sublease." 11CR106.

3

October 8, 2010, the trial court granted J. Black's motion in part and dismissed those claims. 11CR710. However, the trial court specifically refrained from finding that Woody had breached the sublease by claiming that J. Black's had breached the sublease. Although J. Black's requested such a finding in its proposed order, the trial court struck through that language:

**ORDER GRANTING**
**DEFENDANTS' SECOND MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

On the 5th day of October 2010, the Court heard Defendants' Second Motion for Partial Summary Judgment. Having considered the Motion, the evidence and the arguments of counsel, and noting that Plaintiffs did not file any response to the Motion, the Court hereby GRANTS the Motion. It is therefore ORDERED, ADJUDGED, AND DECREED that Defendants take nothing by their claims that Defendants have defaulted under the Sublease agreement with Plaintiff Bob E. Woody. It is further ORDERED, ADJUDGED, AND DECREED that Defendants take nothing by their claims for conversion, trespass to personal property, and theft. ~~It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff Bob E. Woody has breached the Sublease agreement with J. Black's by asserting false and nonexistent defaults against Defendant~~.

Signed this 8th day of October, 2010.

_____
Judge Presiding

15CR710; *see also* 15CR636 (correcting misidentification of parties in October 8, 2010 order).[2]

---

[2] These orders were issued by then-Judge (now Chief Justice) Jeff Rose.

4

On January 12, 2012, the trial court signed a final judgment awarding J. Black's specific performance, attorney's fees, and sanctions (based on Woody filing a summary judgment motion pertaining to the court's prior summary judgment rulings). 11CR868-870. In February 2012, while Woody's motion for new trial was pending, Woody and J. Black's executed an amended sublease agreement, which changed some of the sublease's requirements concerning food service and alterations to the premises. 15CR1636-1638. Woody appealed the final judgment to this Court, which transferred the appeal to the Amarillo Court of Appeals. 11CR871.

## 2. First Appeal

The Court of Appeals held that J. Black's exercise of its first option to extend the sublease was effective, even though not received by Woody, on the basis that the sublease's option to use certified mail did not require proof of delivery. App. 1 (*Woody v. J. Black's, L.P.*, No. 07-12-00192-CV, 2013 WL 5744359, at *4 (Tex. App.—Amarillo Oct. 18, 2013)). But the Court of Appeals vacated the trial court's award of specific performance, holding that the "summary judgment record simply does not contain conclusive proof" that J. Black's was ready, willing, and able to perform the sublease. *Id*. at *6. Because the trial court's award of attorney's fees was based on its award of specific performance, the Court of Appeals vacated that award as well. *Id*. at *6-7. The Court of Appeals also found that the trial court abused its discretion by imposing sanctions on Woody and one of its trial attorneys. *Id.* at *7-8.

In addition to arguing on appeal that J. Black's was not entitled to specific

5

performance because it had failed to show it was ready, willing, and able to perform, Woody also argued on appeal that J. Black's was not entitled to specific performance because (1) J. Black's had no proof that Woody committed any actual breach of the sublease; (2) J. Black's did not prove that damages would be an inadequate remedy; (3) the sublease lacked mutuality of obligation; and (4) specific performance would require too much court supervision. Appellants' Brief at 23-32, *Woody v. J. Black's, L.P.*, No. 07-12-00192-CV, 2013 WL 5744359 (Tex. App.—Amarillo Oct. 18, 2013). Because J. Black's failure of proof on the "ready, willing, and able" element was enough to decide the appeal, the court of appeals did not reach Woody's other arguments. App. 1 at *6 ("[R]eview of Woody's remaining arguments challenging the decree of specific performance is unnecessary to the disposition of this appeal." (citing TEX. R. APP. P. 47.1)).

### 3. Remand after Appeal

On remand, J. Black's moved for summary judgment on its claim for specific performance. 15CR996. In support, J. Black's submitted an affidavit from a manager stating "On February 23, 2009 and at all times since the date of February 23, 2009, J. Black's GP, LLC and J. Black's, L.P, has been ready, willing and able to perform the entirety of its obligations under the Sublease" and that "J. Black's has at all relevant times had the necessary funds, resources, and manpower to comply with all obligations." 15CR1200 ¶ 6. J. Black's submitted a "Vendor Quick Report" indicating that it had paid rent and other expenses during January 2015 (and years prior), but submitted no other evidence of its then-current financial condition (*i.e.*,

6

as of January 2015).  In addition, J. Black's submitted no evidence of any actual breach of the sublease by Woody.  Finally, J. Black's submitted no evidence that its legal remedies were inadequate, apart from a statement by its manager that J. Black's had "benefited" from being in a highly-visible/popular location.  15CR1199 ¶ 2.

Woody moved for summary judgment on J. Black's claim for specific performance and argued that J. Black's "ready, willing, and able" evidence was conclusory; J. Black's had no evidence that Woody committed any breach allowing specific performance; J. Black's had no proof that damages were inadequate; the sublease lacked mutuality of obligations; J. Black's prior request for specific performance as to the first lease extension was moot (as that extension expired in August 2012), while J. Black's request for any broader award concerning the parties' future performance under the sublease was unsupported; and specific performance would require undue court supervision.  15CR911, 915-920.

In an effort to avoid most of Woody's arguments, J. Black's repeatedly told the trial court that, according to the *court of appeals'* decision, J. Black's was automatically entitled to a decree of specific performance so long as the trial court determined on remand that J. Black's was ready, willing and able to perform. 15CR1007-08, 1308 & n.14.  J. Black's characterized this as "the law of the case." 15CR1308 & n.14.

Initially, the trial court accepted J. Black's argument and construed the court of appeals' mandate as specifically limited to one issue: whether J. Black's was ready, able and willing to perform the sublease.  15CR1643 (statement by trial court

7

that "the law of the case" requires nothing more from J. Black's other than proof it was ready, willing and able to perform).   At the same time, the trial court granted J. Black's summary judgment motion and denied Woody's competing motion for summary judgment.  15CR1639 (March 11, 2015).

However, the trial court later reconsidered the scope of the appellate court's mandate, acknowledged that the mandate might have been broader than the trial court originally appreciated, but then concluded that the summary judgment should still stand because J. Black's evidence was conclusive as to every element:

> "I noticed in my letter that I indicated in the third to the last paragraph that there was conclusive proof of readiness, willingness and ability to perform and I said law [of the] case requires no more to establish entitlement to award attorney's fees. My recollection is that the Court of [Appeals'] decision could have left open[,] as the other party [Woody] argues, the other issues not reached on the summary judgment and I didn't mention them in the letter. But to the extent the Court of Appeals did not reach those, my order finds that those are also satisfied.
>
> . . .
>
> [J]ust to be clear, I should have put in the letter that the summary judgment evidence before me satisfied those other issues not yet reached by the Court of Appeals."

RR8-9 (March 25, 2015).

Then, on March 31, 2015, the court entered judgment for J. Black's, awarding specific performance of the sublease, $173,438.85 in attorney's fees, $20,000-40,000 in conditional appellate attorney's fees, post-judgment interest, and costs. 15CR1653.

8

In a motion for new trial, Woody argued that J. Black's and the trial court had misconstrued the court of appeals' mandate, pointing out that (1) the court of appeals had skipped Woody's additional arguments about specific performance, not because they had been decided against him, but because they were unnecessary to the disposition of the appeal; and (2) nowhere in the court of appeals' opinion or mandate did that court purport to limit the scope of the remand to one element of specific performance.[3]  15CR1660-61.  In denying Woody's motion for new trial, the court stated:

> "I considered [Mr. Woody's] arguments in [his] motion for new trial that this court has granted more than J. Black's sought in its motion for summary judgment and that J. Black's and I had misconstrued the scope of the remand. Upon reflection, I think Mr. Woody is confusing what this court reached with what the court of appeals reached. This court reached *all* issues in granting the Final Judgment of 2012. The 7th Court expressly reached only the issue on which this court was reversed - readiness, willingness, and ability to perform. J. Black's most recent motion for summary judgment addresses that issue. Whether the Court of Appeals' remand empowers this court to reconsider other rulings entailed in the Final Judgment of 2012, it does not require it to do so. This court can let stand the prior rulings it still believes are correct. If there is an appeal of the 2015 judgment, the judgment does not preclude the appellate court from reviewing prior rulings of this court that it did not reach in the first appeal."

---

[3] When an appellate court vacates and remands a case for further proceedings and the mandate is not limited by special instruction, the effect of the remand is to re-open the case in its entirety on all factual issues. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *First State Bank of Bishop v. Grebe*, 162 S.W.2d 165 (Tex. Civ. App.—San Antonio 1942, writ ref'd w.o.m.) (opinion and mandate remanding a cause for further proceedings "in accordance with this opinion when not modified by more specific instructions, has the effect of remanding the cause for a trial on all issues of fact").

15CR1705-06 (May 6, 2015).  On May 13, 2015, Woody timely filed his notice of appeal.  15CR1708; TEX. R. APP. P. 26.1(a)(1).

## STANDARDS OF REVIEW

An appellate court reviews the district court's summary judgment rulings *de novo*.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003).

A movant seeking a traditional summary judgment on its own cause of action or affirmative defense has the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of its cause of action or affirmative defense.  *See M.D. Anderson Hosp. and Tumor Institute v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2001) (per curiam).  If the movant meets this burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment.  *Oram v. General Am. Oil Co. of Texas*, 513 S.W.2d 533, 534 (Tex. 1974).

Where both parties move for summary judgment on overlapping issues and the district court grants one motion and denies another, the appellate court reviews the summary judgment evidence presented by both sides, determines all questions presented, and renders the judgment that the district court should have rendered.  *Texas Worker's Compensation Com'n v. Patient Advocates of Texas*, 136 S.W.3d 643, 648 (Tex. 2004).

10

A trial court's admission of evidence is reviewed for an abuse of discretion. *See Syndex Corp. v.* Dean, 820 S.W.2d 869, 873-74 (Tex. App.—Austin 1991, writ denied) ("test is whether the court acted without reference to any guiding rules and principles" or "the act was arbitrary or unreasonable"); *In re Ferguson*, 445 S.W.3d 270, 274 (Tex. App.—Houston [1st Dist.] 2013) (orig. proceeding) ("With respect to a trial court's determination of legal principles, [a] trial court has no 'discretion' in determining what the law is or applying the law to facts." (internal quotation marks omitted)).

A court's decision to award fees on a statutory basis is reviewed *de novo*. *See Shilling v. Gough*, 393 S.W.3d 555, 559 (Tex. App.—Dallas 2013, no pet.); *Gereb v. Smith-Jaye*, 70 S.W.3d 272, 273 (Tex. App.—San Antonio 2002, no pet.); *Atl. Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 450 (Tex. App.—Texarkana 1993). (Although the *amount* of fees may be reviewed for abuse of discretion, *see Atlantic Richfield*, 860 S.W.2d at 450, it is J. Black's *entitlement* to fees that is being disputed here, not their amount.)

## SUMMARY OF ARGUMENT

In the spring of 2009, Woody and J. Black's disputed whether J. Black's had effectively extended the parties' sublease. Woody believed J. Black's had *not* effectively extended the sublease and that J. Black's was also in default based on its installation, use, and removal of gas heaters and its food service. Accordingly, Woody told J. Black's that it would have to vacate the premises at the end of the lease term or pay holdover (*i.e.*, higher) rent. J. Black's ignored Woody, remained

11

in the premises, and paid no higher rent. Rather than lock J. Black's out, seek to evict J. Black's, or otherwise interfere with J. Black's actual use and enjoyment of the premises, Woody let the parties' disputes be resolved by the judicial process.

The trial court and Amarillo Court of Appeals both determined that J. Black's had effectively exercised its option to extend the sublease term, which resolved the parties' dispute as to the first sublease extension. In addition, J. Black's successfully defended against Woody's breach of contract claim in the trial court, a determination Woody chose not to appeal.

In the meanwhile, the parties have operated as sublessor and sublessee without incident. Indeed, the parties negotiated and executed an amended sublease (in February 2012) and J. Black's has invoked two more 3-year extensions of the sublease term—both of which Woody recognized, thereby allowing J. Black's to remain in the premises through August 2018 so long as it was not in default.[4]

The parties' dispute is still ongoing, however, because J. Black's wants to recover attorney's fees, while Woody does not believe they are recoverable. In particular, although J. Black's successfully defended against Woody's original breach of contract claims, a successful defense does not give rise to a claim for attorney's fees unless the contract in question has a prevailing party clause, which the sublease did not.

Before the first appeal, J. Black's did obtain a finding from the trial court that

---

[4] If J. Black's timely exercises its one remaining term extension option and it is not in default, the sublease term could continue through August 31, 2021.

Woody breached the sublease by "refusing to acknowledge" J. Black's exercise of its first extension of the sublease, but J. Black's suffered no damages from that, nor did it seek or recover any. As such, J. Black's cannot recover attorney's fees under Texas Civil Practice and Remedies Code § 38.001 based on any contract damages award. Thus, the only remaining (potential) avenue for attorney's fees was J. Black's request for specific performance, but that avenue fails for the following three reasons.

First, in 2009, J. Black's claim was for specific performance of the first sublease extension. But J. Black's never proved any actual breach of the sublease by Woody. At most, J. Black's just proved an anticipatory repudiation that never turned into an actual breach. At first, this may sound like a distinction without a difference. But under Texas law, a claimant cannot obtain specific performance based on an anticipatory repudiation unless the repudiation turns into an actual breach of a performance obligation, which never occurred here.

Second, specific performance is only available when legal remedies are inadequate. Here, however, J. Black's produced no evidence that its legal remedies were inadequate. Conversely, Woody *did* demonstrate that J. Black's had an adequate legal remedy. In particular, Woody showed that J. Black's had years of financial data and thus could have shown the profits it made from operating its restaurant/bar, which in turn could have been used to show any lost profit damages if J. Black's ever had been wrongly evicted from the location (which, again, never happened).

13

Third, J. Black's produced no competent evidence that it was "ready, willing, and able" to perform; instead, J. Black's just made a conclusory statement to that effect with no supporting financial information.

Finally, even if the trial court's award of specific performance were proper, it does not support any award of attorney's fees because at the time it was entered (March 31, 2015), Woody had not committed any actual breach of any performance obligation under the sublease in the preceding 8+ years. As such, there was no basis to say that an award of specific performance had any *value* (as needed, at a minimum, to support an award of attorney's fees). Alternatively—and although some courts have awarded attorney's fees in connection with awards of specific performance—such an award is unsupported by Texas Civil Practice & Remedies Code § 38.001, which facially requires a plaintiff to first recover some "amount" on an associated contract claim.

For these reasons, the trial court's award of specific performance should be reversed, and its awards of fees, interest, and costs should be vacated.

**ARGUMENT**

## I.    Principles of Specific Performance

Specific performance is a remedy for a breach of contract. To obtain this remedy, a party must prove: (a) a breach of contract; (b) that damages for the breach are inadequate; and (c) that it is ready, willing, and able to perform its obligations under the contract. *See Paciwest, Inc. v. Warner Alan Properties, LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied) (breach); *United Coin Meters*

14

*Co., Inc. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882 (Tex. Civ. App.—Ft. Worth 1973) (inadequacy of legal damages); *DiGuiseppe v. Lawler*, 269 S.W.3d 588, 595 (Tex. 2008) (ready/willing/able to perform).

In addition, an order of specific performance is improper if (d) the breach to be remedied is not associated with a present performance obligation or (e) the order does not bind both parties to the contract. *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487-88 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 888 (Tex. Civ. App.—Fort Worth 1973, no writ) (both stating that remedial relief must be connected to present performance obligations); *Galbreath v. Farrell*, 249 S.W. 277, 280 (Tex. Civ. App.—Dallas 1923, no writ) ("[A court of equity] never deems it wise or just to enforce one or more of the promises in a contract until it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant."); *United Coin Meter*, 493 S.W.2d at 888 (same).

To correctly apply the above principles in the present case, one distinction is particularly important: the three-way distinction between (1) an actual breach of a performance obligation; (2) an anticipatory repudiation of a performance obligation that never matures into an actual breach of a performance obligation; and (3) a legal dispute, such as a dispute over contract terms/interpretation or the adequacy of one parties' performance. This three-way distinction is relevant because an award of specific performance requires an (1) actual breach, not merely (2) an anticipatory

repudiation or (3) legal dispute, even if the legal dispute is ultimately losing.

In particular, when one party repudiates a contract, the other party can choose to immediately sue for damages. But if suit is brought before any actual breach, the contract is treated as terminated, and the plaintiff cannot sue on the contract for specific performance. *See Thomas v. Thomas*, 902 S.W.2d 621, 625 (Tex. App.—Austin 1995, writ denied) ("[A]ppellant 'elected' to terminate the contract when she chose to sue for anticipatory repudiation instead of waiting to enforce the contract and sue to collect the alimony installments as they became due and unpaid."); *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071-02 (1904) ("[A] contract cannot be . . . treated, for one purpose, as subsisting, and, for another purpose, as at an end. Upon [an anticipatory] repudiation . . . the [non-repudiating party] may make his choice between the two courses open to him, but can neither confuse them together nor take both."); *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999) ("[T]he effect of . . . an anticipatory repudiation is to give the nonrepudiating party the option of treating the repudiation as a breach or ignoring the repudiation and awaiting the agreed upon time of performance."), *on reh'g in part*, 997 S.W.2d 203 (Tex. Aug. 26, 1999); *Humphrey v. Showalter*, 283 S.W.2d 91, 94 (Tex. Civ. App.—Eastland 1955, writ ref'd n.r.e.) ("If [the non-repudiating party] accepts the renunciation as terminating the agreement and as relieving him from further performance, [the non-repudiating party] may not afterwards sue on the contract [for specific performance]; his action should be for damages for a breach.").

The following four examples illustrate the importance of these principles in factual contexts that, while simple, are materially analogous to those that arose in the present case:

1. Suppose John and Sarah executed a contract for Sarah to buy John's house for $100,000, with closing set to occur 60 days later. A few weeks pass and John has second thoughts. Days before closing, he tells Sarah, "I've decided I don't want to sell my house after all." Sarah immediately sues John and seeks a remedy for his actions. What are Sarah's available options? Sarah can seek damages but not specific performance because John's actions constitute an anticipatory breach rather than an *actual* breach of a performance obligation. Accordingly, if Sarah sues immediately and demonstrates that the value of John's home was $150,000, she could get an award of $50,000 in damages, but not specific performance. Conversely, if Sarah waited until closing came and went—and assuming John did not perform—Sarah could obtain $50,000 in damages or an award of specific performance (assuming all elements of specific performance are otherwise shown).

2. Suppose that, right before closing, John realized his change of mind was not a legal defense and instead of breaching, he went ahead and conveyed the property to Sarah. If that happened, Sarah would have no basis to sue, even though there was a period of time while she was uncertain as to what might happen.

3. Suppose John agrees to rent his home to Sarah for $1,000/month under a two-year lease. The lease says "no pets" and enforces any violation with a $50/day liquidated damages clause day. During the term of the lease, Sarah buys a goldfish.

John tells her that she is in breach and must either leave or pay $50/day. Sarah does neither. John consults his attorney, who informs him that he could seek to evict Sarah, either actually (*e.g.*, by changing the locks) or constructively (by instituting eviction proceedings). John does neither. Instead, he sues Sarah for breach. Sarah counterclaims that John's claim of breach is meritless and thus constitutes a breach of the lease all by itself.

Both John and Sarah seek attorney's fees, but the lease does not include a "prevailing party" provision that would award attorney's fees to a party even for merely successfully *defending* a breach of contract claim. The court concludes that a goldfish is not a pet under the lease and thus rejects John's breach of contract claim. At the same time, the court does not find that John's losing claim itself was a breach of the lease and rejects Sarah's claim, including her claim for fees. Was that correct? Yes. John never promised to not sue Sarah for potential breaches that turned out not to be breaches, and to imply any such a promise would substantively incorporate a "prevailing party" clause into the contract despite its absence.[5]

4.     Suppose that after the goldfish incident, Sarah completes her lease and, in fact, renews it for two more years pursuant to a renewal option. Further suppose that after two more years, she renews it again pursuant to a second renewal option. In addition, suppose that Sarah not only extended the lease, but also negotiated some

---

[5] *See Polansky v. Berenji*, 393 S.W.3d 362, 368 (Tex. App.—Austin 2012, no pet.) ("The trial court abused its discretion to the extent that it awarded the [prevailing defendants] their attorneys' fees as the prevailing parties without a statutory or contractual basis to do so.").

changes to the terms, including a removal of the "no pets" provision. Then, at the start of the third term (*i.e.*, after four years in the house), Sarah preemptively sues John based on the fear that he might make some future claim of default.

Sarah then asks the court for a "general" award of specific performance that would require John to broadly "comply with the lease." She does not mention any specific concern about what John might be planning to do, she just says that, based on John's past conduct, she is afraid he may make a losing claim again. Should the court award specific performance? The answer is no because specific performance is a remedy for an actual contractual breach. It is not a prophylactic means to coerce future performance that might or might not occur on its own, let alone compel "generic" performance of all obligations, especially where there is no indication of any impending threatened breach. (This scenario is like the present case: after some legal disputes arose—but before the first appeal—the parties executed an amended contract, and then on remand after appeal, one party sought specific performance of the new contract based solely on the fear that the other *might* in the future either breach the contract or raise a losing dispute, neither of which is sufficient to obtain specific performance in the absence of any actual breach.)

As next shown, the above principles and examples confirm that the trial court's award of specific performance in this case (and, in turn, its awards of fees, interest, and costs) was improper.

## II. The trial court erred in granting summary judgment for J. Black's and not for Woody on J. Black's claim for specific performance.

### A. *Woody never actually breached any performance obligation.*

19

As explained above, the distinction between an actual breach of a performance obligation (on the one hand), and either a threatened breach or legal dispute (on the other hand), is important because specific performance cannot be awarded absent an actual breach.

Here, J. Black's sued Woody, claiming that Woody had: (1) refused to recognize the validity of J. Black's lease extension; (2) wrongly demanded holdover rent and that J. Black's vacate the premises; and (3) alleged nonexistent defaults by J. Black's. But even if true, none of those events was a breach of any performance obligation by Woody. Woody never promised to make only "winning" arguments, claims, or demands with respect to his construction of the sublease's terms or the adequacy of J. Black's performance of its obligations under the sublease. More specifically, Woody never agreed not to have a legal dispute regarding the sublease's requirements for giving notice of extensions, nor did Woody ever agree not to demand that J. Black's either pay holdover rent or vacate the premises when its lease term was up, nor did Woody ever agree not to complain about J. Black's food service. To view the parties' sublease otherwise would effectively add a "prevailing parties" attorney's fee clause that the parties never agreed to.

That said, Woody's alleged actions might be read as a threat to take further action (on his own or through the courts) to dispossess J. Black's of its use of the subleased premises, which, *if the threat was carried out and Woody's view of things turned out to be wrong*, could be a breach of the sublease. But that just means that Woody's initial actions, if viewed as threats, might be construed as an anticipatory

20

repudiation of the sublease.

But in order to seek specific performance in the face of merely threatened breaches of contract, J. Black's had to wait and see if any actual breaches occurred. Here, however, no actual breaches occurred because it is undisputed that Woody never actually or constructively evicted J. Blacks, instead allowing J. Blacks to remain in continuing possession of the property at all times since the lease began September 1, 2006. *See Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission. . . . The essential elements of constructive eviction are: (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premises; and (4) the tenant abandons the premises within a reasonable time after the commission of the act. . . . The landlord's intent may be inferred from the circumstances.").[6]

---

[6] In addition, because J. Black's remained in possession of the premises throughout the first and second (and now third) term extensions—and with all parties treating the sublease as continuing through August 2018—J. Black's forfeited any claim for breach of contract based on any anticipatory repudiation that occurred in 2009. *See Delgado v. Methodist Hospital*, 936 S.W.2d 479, (Tex. App.—Houston [14th Dist], no pet.) (plaintiff waived any claim for breach of contract by insisting on and accepting performance of contract and being furnished private room as contracted for); 15CR919 (presentation of waiver argument to trial court).

21

Again, it is important to distinguish between (1) an actual breach of a performance obligation and (2) a legal dispute about contractual requirements/performance. The parties disagreed as to whether J. Black's had effectively given timely notice of its intent to exercise its first option to extend the sublease; whether J. Black's was in default of the lease (*i.e.*, in connection with the gas heaters or its food services); whether Woody was "wrong" in refusing to recognize J. Black's exercise of its extension option, demanding holdover rent, and telling J. Black's to vacate the premises before September 1, 2009; and whether Woody had breached the sublease by alleging nonexistent defaults. And, to be sure, the trial court decided most of these disagreements in J. Black's favor, holding that J. Black's notice was effective; J. Black's was not in default; and Woody was "wrong" in not recognizing the extension.[7]

But the fact that Woody was wrong about the validity of the extension was not itself a breach of any performance obligation under the lease.[8] Indeed, although Woody believed J. Black's had failed to extend the lease, and although Woody's attorney sent demand letters to J. Black's to vacate the premises or pay higher rent, Woody never attempted to evict J. Black's, either actually or constructively, nor did Woody ever collect or receive any holdover rent.

---

[7] The trial court did not find that Woody breached the sublease by alleging non-existent defaults; demanding holdover rent; or telling J. Black's to vacate the premises. *See supra* at pp. 3-4 & n.1.

[8] Although unnecessary to determine, the same is true with respect to Woody's demand for J. Black's to leave or pay holdover rent, as well as Woody's allegations that J. Black's was otherwise in default under the sublease.

J. Black's may argue that Woody's conduct still constituted some kind of breach of the implied covenant of peaceable and quiet possession. In its first summary judgment, the district court ruled that Woody had breached the sublease, which was affirmed on appeal. J. Black's accompanying motion prayed for a finding that Woody had breached the sublease by refusing to recognize J. Black's exercise of the first lease term extension option. 11CR106. But J. Black's made no argument, nor requested any finding, that Woody had somehow breached the implied covenant of peaceable and quiet possession. As such, while the trial court's first summary judgment can be read as a finding of anticipatory breach, it cannot be read as a finding of any actual breach of any performance obligation.

J. Black's may also argue that Woody wrongly asserted that J. Black's was in default of various provisions of the sublease, and it is true that the trial court found against Woody on his allegations of default. But even though J. Black's wanted the trial court to declare those allegations to somehow be breaches of the sublease, the trial court did not. Instead, the trial court crossed out such language on J. Black's proposed order, *see supra* at p. 4, a determination J. Black's did not appeal.

Moreover, litigants have the right to bring their contract-related issues to court, and it is not a breach of contract merely to lose. Any other view would be contrary to the rule that successful defendants are entitled to attorney's fees in breach of contract actions only if there is a contractual "prevailing parties" provision, which this sublease did not have. *See Gasparotto v. Gallagher Power Fence, Inc.*, No. 03-03-00383-CV, 2004 WL 101689 (Tex. App.—Austin Jan. 23, 2004, no pet.) (mem.

23

op.).[9]

In sum, the original breach found by the trial court was not the type of breach that can support an award of specific performance, and there is no evidence in the record to support any finding of an actual breach. Indeed, J. Black's has remained in possession of the premises at all times since the sublease began, and has even exercised its third extension option to stay in possession of the premises through August 31, 2018. 15CR1271.

In addition, Woody submitted an affidavit stating that he "accept[ed], acknowledge[d] and agree[d] that J. Black's [had] timely exercised its third option to extend the sublease term through August 31, 2018." 15CR1270 ¶ 3. The trial court granted Woody's request to supplement the summary judgment record with J. Black's letter extending the sublease through August 2018, but the court struck the quoted paragraph (¶ 3) of Woody's affidavit. 15CR1639-40. But there was nothing inadmissible about Woody's acknowledgment that J. Black's had timely exercised its third option, and it is relevant in showing how Woody and J. Black's have continued to operate under the amended sublease without issue. The trial court's exclusion of that paragraph was thus an abuse of discretion; indeed, even J. Black's did not contend that Woody had repudiated J. Black's exercise of that option.

Likewise, the fact that J. Black's prevailed against Woody's claims of breach

_____

[9] A losing party might also be penalized through sanctions if a claim was held to be groundless, but there was no such finding here.

24

also does not equal a breach that would support an award of specific performance, nor did the trial court so find. J. Black's request for specific performance on a sublease that is being successfully performed by both parties is merely an improper attempt to recover attorney's fees for successfully defending Woody's original suit. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co*, 835 S.W.2d 75, 77 (Tex. 1992) (attorney's fees may not be recovered unless provided for by statute or by contract between the parties); *Polansky v. Berenji*, 393 S.W.3d 362, 368 (Tex. App.—Austin 2012, no pet.) ("The trial court abused its discretion to the extent that it awarded the [prevailing defendants] their attorneys' fees as the prevailing parties without a statutory or contractual basis to do so.").

For these reasons, J. Black's was not entitled to summary judgment on its claim for specific performance, and Woody was entitled to summary judgment that J. Black's was not entitled to specific performance.

## B. *J. Black's submitted no admissible evidence—let alone conclusive evidence—that it was ready, willing, and able to perform.*

The trial court abused its discretion in considering statements that were inadmissible because they were conclusory and subject to a valid best evidence objection. In particular, J. Black's submitted an affidavit from manager Sean Fric, who stated that J. Black's "has at all relevant times had the necessary funds, resources, and manpower to comply with all obligations." 15CR1200 ¶ 6. Although this statement may superficially appear relevant, that is only because it contains an implied reference to financial information that in theory could prove the accuracy of

25

the statement, as by showing the then-current financial status of J. Black's.[10]  But if any such information existed, it was not disclosed by J. Black's, let alone established to be reliable/admissible.  Woody thus objected to Fric's statement as a conclusory, speculative, subjective belief that was (1) unsupported by factual data; (2) hearsay with respect to its implicit reference to the undisclosed information; and (3) in violation of the best evidence rule.  15CR1288-89; 15CR1613-14.[11]  In particular, under the best evidence rule, J. Black's had to attach and authenticate any financial documents whose contents were referenced expressly or implicitly by Fric's testimony. *See* TEX. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise.").

The trial court thus committed an abuse of discretion that was harmful error in overruling Woody's objection and relying on Sean Fric's statement (15CR1639). And because J. Black's submitted no other evidence to show that it was ready, willing, and able to perform the sublease, J. Black's was not entitled to summary

---

[10] To be clear, Mr. Fric's affidavit included a printout showing J. Black's past payment of expenses, but nothing showing J. Black's current financial status, such as a current balance sheet or financial statement.

[11] *See Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.) (conclusory statements in affidavit are inadmissible); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (affidavit must be based on personal knowledge); *Prudential Ins. Co. of Am., Inc. v. Black*, 572 S.W.2d 379, 380 (Tex. Civ. App.—Houston [14th Dist.] 1978) ("The best evidence rule . . . mandates that the only competent evidence to prove the contents of a document is the document itself."); TEX. R. EVID. 401 (defining relevant evidence), 402 (irrelevant evidence is not admissible), 802 (hearsay is inadmissible absent exception), 1002 (best evidence rule).

judgment on its claim for specific performance, and Woody was entitled to summary judgment that J. Black's was not entitled to specific performance.

## C. The trial court's determination that damages would be an inadequate remedy should be reversed.

### 1. J. Black's submitted no evidence—let alone conclusive evidence—that damages would be an inadequate remedy.

Although specific performance is ordinarily granted in certain kinds of cases (such as sales of realty) based on the inadequacy of legal remedies, specific performance is not a remedy that exists "as a matter of right" even in those cases. *See United Coin Meter*, 493 S.W.2d at 887 (where plaintiffs sought specific performance of leases involving real estate, court rejected claim that plaintiffs did not have to prove legal remedies were inadequate). Therefore, it was incumbent on J. Black's to prove that legal remedies (*i.e.*, damages) would be inadequate. *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 489 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (specific performance not available because, among other reasons, plaintiffs "have not shown that they lack an adequate remedy at law"); *United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 886 (Tex. Civ. App.—Fort Worth 1973, no writ) ("[T]o get specific performance of a contract the party seeking it must show that he has no adequate remedy at law by way of an action for damages for breach of contract, and if an adequate remedy at law is available, then specific performance will not be granted.").

Here, however, J. Black's submitted no admissible summary judgment evidence that damages would be an inadequate remedy at law in the unlikely event

27

that Woody allegedly committed some future breach of the sublease agreement. By contrast, it was undisputed that J. Black's has been in continuous possession of the premises since September 1, 2006, and has been conducting its business for well over 8 years. In addition, financial information attached to both Sean Fric's and Woody's affidavits demonstrated that J. Black's maintained past financial records, which could have been used to calculate lost profit damages if a breach had occurred. 15CR1256-1261, 1591-96;[12] *see United Coin Meter*, 493 S.W.2d at 888 ("It is obvious that since the plaintiffs had been engaged in the performance of these contracts for more than 5 years that all data needed for proving the damages they would sustain by reason of defendant's breach of contract is readily available to them").

As the court stated in *United Coin Meter*, "Since the only benefit plaintiffs could get from a performance of the contracts for the rest of the terms is the amount of net profits they would realize from a complete performance of the contracts, a judgment awarding recovery of that amount would be an adequate remedy." *Id.* at 888 (citing *Lone Star Salt Co. v. Texas Short Line Ry. Co.*, 99 Tex. 434, 90 S.W. 863 (1906)). J. Black's failure to prove this required element for specific performance defeats its entitlement to such relief. *See United Coin Meter*, 493 S.W.2d at 887.

2.     *J. Black's did not move for summary judgment on this element.*

On remand, J. Black's summary judgment motion did not expressly move for

---

[12] Because Woody is a limited partner of J. Black's, he occasionally receives financial information, such as statements of cash flow, balance sheets and profit and loss.

summary judgment on the issue of a lack of an adequate remedy at law. In addition, both J. Black's motion and J. Black's response to Woody's summary judgment motion argued that the trial court had to comply with the court of appeals' mandate and <u>solely</u> address the ready/willing/able element. 15CR1007-08; 15CR1308 & n.14.

The body of J. Black's motion did briefly argue that J. Black's legal remedies were inadequate. 15CR1005-06. But given (1) J. Black's repeated claims that the only issue for the trial court was the ready/willing/able element as well as (2) the lack of any other specifically listed grounds for summary judgment, the trial court's resulting order should be treated as invalid for granting summary judgment on grounds not presented by the movant. *See Roberts v. Southwest Texas Methodist Hosp.*, 811 S.W.2d 141, 146 (Tex. App.—San Antonio 1991), writ denied (Oct. 16, 1991) ("When a motion for summary judgment asserts grounds *A* and *B*, it cannot be upheld on grounds *C* and *D*, which were not asserted, even if the summary judgment proof supports them and the responding party did not except to the motion."). Woody brought this error to the trial court attention in his motion for new trial, 15CR1660-61, which the trial court denied, 15CR1707.

For these reasons, J. Black's was not entitled to summary judgment on its claim for specific performance, and Woody was entitled to summary judgment that J. Black's was not entitled to specific performance.

**D.** ***The trial court's award of specific performance is improper because it is not based on a breach associated with any present performance obligation.***

Before the first appeal, J. Black's sought specific performance of the first

29

extension of the parties' original sublease. On remand after the first appeal, J. Black's abandoned that request, which was moot for two reasons. For one, the first extended term had expired on August 31, 2012. Second, after the judgment in the first case, Woody and J. Black's executed an amended sublease agreement, which changed some of the sublease's requirements concerning food service and alterations to the premises. 15CR1636-1638. In other words, neither the contract, nor the contract term, that previously was at issue existed anymore. Consistently, on remand, J. Black's did not even ask the trial court to order specific performance of the first contract extension term of the parties' original contract.[13] Instead, J. Black's asked the trial court to issue a decree of specific performance ordering Woody not to interfere with J. Black's right to peaceful and quiet possession of the sublease premises during the second (and possibly third and fourth) extended terms of their current contract:

> "J. Black's is entitled to a grant of specific performance of the Sublease and a judgment that Woody be compelled to comply with its obligation to allow J. Black's to peaceably and quietly maintain its right to possess and enjoy the Premises thereunder."

15CR1009. The trial court went even further, issuing a broad order that "Woody shall specifically perform the entirety of his obligations under that certain Sublease

---

[13] *Accord United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 891 (Tex. Civ. App.—Fort Worth 1973, no writ) ("It is obvious that since the terms provided for in the contracts have come to an end, that a court can no longer order specific performance of that contract. We would have affirmed the entire judgment had not part of the case become moot.").

30

Agreement dated August 21, 2006, as it has been extended and modified," 15CR1653, ostensibly based on J. Black's fear that Woody might someday in the future assert a made-up claim of default by J. Black's. 15CR1010-11.

J. Black's request for specific performance was invalid for two reasons. First, J. Black's had no pleadings on file alleging a breach by Woody of any implied covenant of peaceful and quiet possession, let alone with respect to the amended contract. Woody objected to J. Black's request for summary judgment on an unpleaded theory, 15CR1272-75,[14] which the trial court overruled, 15CR1639. The trial court committed an abuse of discretion by entertaining a motion for summary judgment on an unpleaded legal theory, which was harmful because the court granted summary judgment in favor of J. Black's. Second, J. Black's had no evidence that Woody had actually breached the covenant.[15]

The court's broader award was invalid for these same reasons, but it also was invalid for two additional reasons. First, it was an abuse of discretion and legally infirm to grant broader relief than J. Black's requested. *See Hegar v. Ryan, LLC*, No. 03-13-00400-CV, 2015 WL 3393917, at *8 (Tex. App.—Austin May 20, 2015, no. pet. h.) (error for trial court to grant broader relief than requested).

Second, a generic decree to simply perform all future obligations under a contract is improper under Texas law. In particular, it is improper for a court to

---

[14] *See also* 15CR1655-56.

[15] Indeed, with respect to the parties' amended sublease, J. Black's had no evidence that Woody had ever even threatened to breach any performance obligation.

31

order a party to perform a continuous series of future acts extending over a long

period of time:

> "[T]o order specific performance . . . present performance must be possible. . . . A court should not decree future contractual performance by requiring a party to perform a continuous series of acts, extending through a long period of time, over which the court exercises its supervision. . . . Instead, absent a significant public interest, parties to a private contract are left to their remedies at law. . . . Here, the trial court's injunction seeks to enforce the future contractual rights of the parties, not to stop any current breach of the agreements and enforce present performance. . . . We conclude that the agreements do not support specific performance by injunctive enforcement . . . ."

*Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487-88 (Tex. App.—Houston [1st

Dist.] 2006, pet. denied).[16]

Here, the parties' amended sublease has numerous provisions and there was

no evidence that Woody was breaching – or even threatening to breach – any of

---

[16] *See also United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 888 (Tex. Civ. App.—Fort Worth 1973, no writ) ("[A] court of equity . . . will not decree a party to perform a continuous series of acts extending through a long period of time, requiring constant supervision by the court . . . ." (internal quotation marks omitted)); *United Coin Meter*, 493 S.W.2d at 889 ("[Under the contracts at issue,] the plaintiffs were required monthly . . . to go to the [laundry] machines, collect the money from them, count it[,] and to give the apartment owners their part of the proceeds. One of the contracts had several years yet to run. . . . [T]he court could not render a specific performance decree capable of being presently performed that would dispose of the entire controversy and this was an additional reason why the court did not err in refusing to decree specific performance of the contracts."); *S. Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied) ("The purpose of specific performance is to compel a party who *is* violating a duty under a valid contract to comply with his obligations." (citing *Griffin's Estate v. Sumner*, 604 S.W.2d 221, 225 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.) (emphasis added)).

them, whether related to the current term or any future term. Moreover, that sublease is currently expected to continue through August 2018 – and potentially August 2021 if J. Black's exercises its fourth term extension option. In such a situation, a general decree to simply "perform the entirety" of one's obligations is improper.

For example, in *United Coin Meter,* the court rejected the remedy of specific performance where, after trial, (1) there remained a period of years before one of the contracts would end and (2) the contracts called for performance by the parties (or their representatives) of additional unperformed acts during that period. 493 S.W.2d at 877. Like the contract in *United Coin Meter*, the parties' sublease contains numerous obligations (yet unperformed) over a long period of time. Because a decree of specific performance would require court supervision for potentially several more years, specific performance is not appropriate. *See id.*; *see also South Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App.-Amarillo 2008, no pet) (court generally will not decree a party to perform a continuous series of acts which extend through a long period of time and require constant supervision by the court).[17]

Moreover, a generic decree aimed at future events does not end any current *or* future controversy. Both parties have continuing rights and obligations under the

---

[17] Instead, parties are left to their remedies at law unless the public interest is involved. *Beckham v. Munger Oil & Cotton Co.*, 185 S.W. 991, 992 (Tex. Civ. App.–Dallas 1916, no writ).

sublease well into the future. If Woody or J. Black's breaches any future performance obligation, the appropriate remedy is for the parties to be left to their claims for breach of contract at the time of any breach. *See Am. Hous. Res., Inc. v. Slaughter*, 597 S.W.2d 13, 16 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (order granting specific performance was improper where it "would not grant complete relief" and "would leave unresolved the ultimate liability of the [defendants] and, in that respect, would provide no more adequate or prompt relief than if the [plaintiffs] were relegated to a suit for damages upon a final determination of whether the [defendants were actually liable for anything] . . . . [The order's] only purpose would be to provide a ready means of enforcing an ultimate claim for damages. We know of no authority, and appellees have cited none, that would support use of the equitable remedy of specific performance for such a purpose.").

## E. An order of specific performance must compel performance by both parties.

A proper decree of specific performance includes an order against both sides so as to end the controversy. Here, the order does nothing except tell Woody to comply with the terms of the lease, which he was already obliged to do and which there was no evidence of any threat that he wouldn't. *See United Coin Meter*, 493 S.W.2d at 888 ("[I]n the enforcement of affirmative promises[,] a court of equity deems it neither wise nor just to enforce one or more of such promises in a contract unless it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant." (internal quotation marks omitted)); *Galbreath v. Farrell*, 249 S.W. 277, 280 (Tex. Civ. App.—Dallas

34

1923, no writ hist.) ("[B]efore a court of equity will enforce affirmative promises made by defendant in behalf of the plaintiff, it must also be able to enforce the affirmative promises made by plaintiff in behalf of the defendant."). The trial court's award was improper because it binds Woody but not J. Black's.

## III. The district court erred in awarding attorney's fees, interest, and costs to J. Blacks.

### A. *The basis for the award – specific performance – was improper.*

If the Court agrees that specific performance is unavailable, as argued above, then it should vacate the trial court's award of fees, interest, and costs, which were premised solely upon that award.

### B. *Even if specific performance were available, J. Black's would not be entitled to attorney's fees because it obtained nothing of value and/or because it obtained no award of damages.*

To recover attorney's fees under the statute allowing such recovery in breach of contract claims, a litigant must do two things: (1) prevail on a breach of contract claim and (2) recover damages. *See* TEX. CIV. PRAC. & REM. CODE § 38.001; *MBM Financial Corp. v. Woodlands Operating Co., LP*, 292 S.W.3d 660, 666 (Tex. 2009); *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex. 2012).

J. Black's recovered no monetary damages against Woody and is not entitled to recover attorney's fees against under § 38.001. *See Green Int., Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997) (because Green failed to recover damages on its breach of contract claim, Green was not entitled to recover attorney's fees under Section 38.001); *Ashford Partners,* 401 S.W.3d at 40 ("[T]o qualify for fees under the statute, a litigant must prevail on a breach of contract claim and recover damages.");

35

*Haubold v. Med. Carbon Research Inst., LLC*, 03-11-00115-CV, 2014 WL 1018008, at *7 (Tex. App.—Austin Mar. 14, 2014, no pet.).

J. Black's may argue that some courts have allowed fees under § 38.001, even when no damages are recovered, based on an award of specific performance if the award is of "value" or "enforcement prevents actual loss to the aggrieved party." *Boyaki v. John M. O'Quinn & Associates*, PLLC, 01-12-00984-CV, 2014 WL 4855021, at *14 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. filed). But here, the decree of specific performance is of no value and prevents no actual loss because the summary judgment evidence established that ever since the parties' original disputes arose, they both performed under the sublease (for over six years), successfully amended it, and successfully invoked and recognized multiple extensions. For these reasons, this Court should vacate the trial court's award of fees, interest, and costs.

## CONCLUSION

For these reasons, this Court should reverse the trial court's summary judgment in favor of J. Black's and enter summary judgment in favor of Woody on J. Black's claim for specific performance. The Court should also vacate the trial court's award to J. Black's of attorney's fees, interest, and costs. Alternatively, if the Court determines that neither party was entitled to summary judgment on J. Black's claim for specific performance, then the Court should vacate the trial court's judgment and remand for further proceedings. Appellant also requests all such other and further relief to which he may be entitled.

36

Respectfully submitted,

*/s/ Jeremy Gaston*

Jeremy Gaston
Texas SBN 24012685
jgaston@hmgnc.com
HAWASH MEADE GASTON
NEESE & CICACK LLP
2118 Smith Street
Houston, Texas  77002
Telephone:   (713) 658-9001
Facsimile:   (713) 658-9011

Rick Gray
Texas SBN 08328300
rick.gray@graybecker.com
Gray & Becker, PC
900 West Avenue
Austin, TX  78701-2210
Telephone:   512-482-0061
Facsimile:   512-482-0924

Tom C. McCall
Texas SBN 13350300
tmccall@themccallfirm.com
David B. McCall
Texas SBN 13344500
dmccall@themccallfirm.com
The McCall Firm
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759
Telephone:   (512) 477-4242
Facsimile:   (512) 477-2271

Hector H. Cardenas, Jr.
Texas SBN 00790422
hcardenas@cardenas-law.com
THE CARDENAS LAW FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759
Telephone:   (512) 477-4242
Facsimile:   (512) 477-2271

**Counsel for Appellant**

37

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limitation of TEX. R. APP. P. 9.4(i)(2)(B) because this brief contains 10,181 words but excluding those parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Jeremy Gaston*
Jeremy Gaston

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2015 a true and correct copy of the foregoing

document was served on the following counsel of record by electronic filing:

Eric J. Taube
Andrew Vickers
TAUBE SUMMERS HARRISON TAYLOR MEINZER BROWN, LLP
100 Congress Avenue, 18th Floor
Austin, Texas  78701

***Counsel for Appellees***


       */s/ Jeremy Gaston*
       Jeremy Gaston

# No. 03-15-00293-CV

In the Court of Appeals
For the Third Judicial District of Texas
Austin, Texas

BOB E. WOODY,
Plaintiff-Appellant,

v.

J. BLACK'S, LP and J. BLACK'S, GP, LLC,
Defendants-Appellees.

On Appeal from Cause No. D-1-GN-09-001436
In the 345th Judicial District Court of Travis County, Texas
The Honorable Steven Yelenosky Presiding

## APPENDIX OF APPELLANT BOB E. WOODY

Jeremy Gaston
HAWASH MEADE GASTON
NEESE & CICACK LLP
2118 Smith Street
Houston, Texas 77002

Rick Gray
GRAY & BECKER, PC
900 West Avenue
Austin, TX 78701-2210

Tom C. McCall
David B. McCall
THE MCCALL FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759

Hector H. Cardenas, Jr.
THE CARDENAS LAW FIRM
3660 Stoneridge Road, Suite F-102
Austin, Texas 78746-7759

*Counsel for Appellant*

**APPENDIX CONTENTS**

| Tab | Description | Date |
|-----|-------------|------|
| 1 | Amarillo Court of Appeals' Decision | October 18, 2013 |
| 2 | Final Judgment | March 31, 2015 |

i

# Tab One

2013 WL 5744359
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
Court of Appeals of Texas,
Amarillo.

Bob E. WOODY, The Ranch L.L.C., and Hector H. Cardenas, Jr., Appellants
v.
J. BLACK's, L.P. and J. Black's, G.P., L.L.C., Appellees.

No. 07–12–00192–CV. | Oct. 18, 2013. | Rehearing overruled Dec. 19, 2013.

On Appeal from the 345th District Court Travis County, Texas, Trial Court No. D–1–GN–09–001436, Honorable Stephen Yelenosky, Presiding.

**Attorneys and Law Firms**

Tom C. McCall, David B. Mccall, Hector H. Cardenas, for The Ranch L.L.C., Hector H. Cardenas Jr., and Bob E. Woody.

Eric J. Taube, for J. Black's, L.P. and J. Black's, G.P., L.L.C.

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

JAMES T. CAMPBELL, Justice.

**\*1** This appeal arises from a commercial landlord-tenant dispute over the sublease of premises located in Austin. Judgment in the trial court was for appellee J. Black's, LP and J. Black's, GP, LLC (J. Black's). Appellant Bob E. Woody and the Ranch, LLC (Woody) present five issues on appeal. Woody's attorney, Hector H. Cardenas, Jr., joins Woody's fifth issue challenging an award of monetary sanctions in favor of J. Black's. We will affirm in part and otherwise reverse and remand for further proceedings.

**Background**

In 2006, Woody leased property located at 710 West 6th Street in Austin from Montwalk Holdings, LP (the master lease). Woody subleased the first floor of the structure to J. Black's for use as a bar and restaurant. Woody operated a bar known as "The Ranch" in the space above and beside J. Black's. Mr. Woody is also a limited partner in J. Black's.

The primary term of the sublease began September 1, 2006, and ended August 31, 2009, but the sublease gave J. Black's options for extending the term.

To exercise its option to extend the sublease term for an additional thirty-six months, the sublease required J. Black's to provide Woody written notice by March 4, 2009. By notice sent by certified mail, return receipt requested, dated February

23, 2009, J. Black's stated its intention to extend the sublease term through August 31, 2012. The notice was addressed to Woody at the location specified in the sublease. However, it was not received by Woody.

Through two March 2009 letters, Woody demanded that J. Black's cure asserted sublease defaults concerning food service and installation of gas heaters connected to Woody's gas meter without consent and without city permits. J. Black's paid Woody the amount demanded for natural gas used by the heaters and eventually removed the heaters.

During April 2009 Woody's gave J. Black's written notice that its February 23, 2009 notice was not received and the sublease term therefore was not extended. Woody demanded that J. Black's vacate the premises by midnight on August 31, 2009.

Woody filed suit on May 5, 2009, alleging J. Black's committed conversion, breach of contract, theft, and trespass to personal property. At Woody's request, a temporary restraining order issued against J. Black's.

J. Black's answered and through a counterclaim alleged Woody committed fraud concerning the issue of gas heaters and that Woody "repudiated and breached" the sublease by alleging non-existent lease defaults, refusing to recognize the extension of the sublease term, and demanding that J. Black's vacate the premises. J. Black's requested specific performance of the sublease, or alternatively, damages.

J. Black's moved for partial summary judgment on its breach of contract counterclaim. It argued Woody breached the sublease by refusing to acknowledge the extension of the sublease term and demanding holdover rent. The motion was set for hearing on December 14, 2009. On December 9, Woody filed a document containing a response to the motion and its own motion for partial summary judgment on the grounds that J. Black's breached the sublease and that the sublease expired on August 31, 2009. J. Black's objected to the untimeliness of notice and the trial court did not consider Woody's motion at the December 14 hearing. According to an order signed December 17, the trial court granted J. Black's motion "in full."

**\*2** Through an August 2010 motion, J. Black's sought a second partial summary judgment requesting judgment that it did not breach the sublease, Woody breached the sublease by asserting groundless defaults, and J. Black's did not commit conversion, trespass, and theft as Woody alleged. The trial court rendered a partial summary judgment that Woody take nothing on its claims that J. Black's defaulted on the sublease and on Woody's claims against J. Black's for conversion, trespass, and theft. Judgment was not granted, however, on J. Black's claim that Woody breached the sublease by falsely asserting defaults.

During November 2010, J. Black's filed a third motion for partial summary judgment, this time requesting specific performance of the sublease and an award of attorney's fees under Civil Practice and Remedies Code § 38.001 and the master lease.

In January 2011, the trial court signed a judgment, in the form of a final judgment, which, among other things, decreed specific performance and awarded J. Black's the requested attorney's fees under section 38.001. Woody's motion for new trial was granted by an order signed in April 2011.

In October 2011, Woody filed a motion for summary judgment on the grounds that the sublease terminated on August 31, 2009, that J. Black's was in default, and seeking recovery of holdover rent. J. Black's responded and also requested sanctions against Woody and Cardenas under Civil Practice and Remedies Code Chapter 10. According to J. Black's, Woody's motion for summary judgment sought relief previously rejected by the trial court. The trial court denied Woody's motion and entered a monetary sanction of $6,958.00 against Woody and Cardenas. A final judgment was signed on January 12, 2012, and Woody's motion to modify and for new trial was denied by order signed March 28, 2012.

## Analysis

**Extension of Sublease**

By its first, second, and third issues Woody contends the trial court erred in adjudging Woody breached the sublease by refusing to acknowledge its extension by J. Black's.

We review the trial court's grant of summary judgment *de novo. Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). We take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To obtain summary judgment, a movant must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986).

In part relevant to this discussion, the sublease provides:

> 3.01 *Term....* If Sublessee is not in default under the Sublease, and subject to notice from Sublessee to Sublessor at least one hundred and eighty (180) days prior to the end of the Term or an extension of the Term, that Sublessee intends to exercise one or all of sublessee's four options to extend the Sublease for thirty-six (36) additional months, each as further described in *Section 4.01* (the "Option Periods"), the term of the sublease may be extended by Sublessee accordingly. The option to renew belongs to Sublessee and will not require Lessor's or Sublessor's approval.

**\*3** Material to the parties' present dispute, the sublease further provides:

9.04 *Notices.*Subject to Article 1.02[1] hereof, all notices, consents, requests, instructions, approvals and other communications provided for herein and all legal process in regard hereto shall be validly given, made or served, if in writing and delivered personally or sent by United States certified or registered mail, postage prepaid, return receipt requested:

[1]    The sublease is not consistent in its use of the identifiers "section" and "article." Solely for the sake of clarity, we will hereinafter refer to the numbered paragraphs of the sublease as "sections."

If to Sublessor:

  2204 Point Bluff

  Austin, Texas 78746

  Attn: Bob Woody

\* \* \*

or to such other addresses as any party hereto may, from time to time, designate in writing delivered in a like manner.

Woody's contention summary judgment for J. Black's was improper begins with the summary judgment evidence Woody did not receive the February 23, 2009 notice J. Black's sent by certified mail, return receipt requested. According to Woody's interpretation of the sublease's section 9.04, an effective notice, if sent by certified mail, return receipt requested, must actually be delivered to the addressee. For support for his reading of the section, Woody depends on the phrase "delivered in a like manner," appearing at the section's end. His reading is further supported, Woody contends, by the language of section 3.01 of the sublease which requires notice of extension "from" J. Black's "to" Woody. Woody contends that because he did not receive J. Black's notice, it was not delivered nor was it notice "to" him.

We follow settled rules of contract construction when construing a lease.*Luccia v. Ross,* 274 S.W.3d 140, 146 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). Construction of an unambiguous contract is a question of law we review *de novo. Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex.2011). Our primary concern when construing a written contract is ascertaining and giving effect to the intention of the parties expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). If possible, when construing a contract, we first consider the instrument's plain language.*Rowan Companies, Inc. v. Wilmington Trust Co.,* 305 S.W.3d 698, 708 (Tex.App.-Houston [14th Dist.] 2009, pet.

granted, judgm't vacated w.r.m.); *see Lesikar v. Moon,* 237 S.W.3d 361, 367 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) ("Common words should be given their plain meaning unless the context indicates the words were used in another sense"). Absent the manifestation of a different intention, courts interpret contract language according to its generally prevailing meaning. *Rowan Companies, Inc.,* 305 S.W.3d at 708.

We find Woody's contentions meritless. By the plain language of section 9.04 of the sublease, notices are validly given if in writing *and* delivered personally *or sent* by United States certified or registered mail, postage prepaid, return receipt requested to the designated address. Woody's reading, requiring that notices sent by certified mail be delivered, ignores the section's plain provision of alternate means of giving notice, by personal delivery or by mail, certified or registered. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003) (to ascertain the true intentions of the parties from an instrument, a court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless").

**\*4** The phrase to which Woody points, "delivered in a like manner," plainly refers not to the giving of notices or other communications but to a party's designation of a notice address other than that listed in the sublease. If, as Woody contends, the phrase requires that such designations actually be delivered, a question that is not before us and on which we express no opinion, such would not be surprising, since designation of a new notice address by a party amounts to an amendment of the sublease.

If resort to rules of construction is necessary to aid our understanding of the role of the phrase "delivered in a like manner," we find the grammatical "rule of the last antecedent" applicable. The rule provides that "qualifying words, phrases, and clauses" apply only to the immediately preceding words or phrase and "are not to be construed as extending to and including others more remote."[2]*Rowan Companies, Inc.,* 305 S.W.3d at 708;*see Stewman Ranch, Inc. v. Double M. Ranch, Ltd.,* 192 S.W.3d 808, 812 (Tex.App.-Eastland 2006, pet. denied) (explaining rule and noting it is not inflexible or controlling and must be applied with due regard for the entire instrument).*Cf. Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (last antecedent rule not absolute and can be overcome by other indicia of meaning).

[2]    The last antecedent rule of construction means that "A or B with respect to C" contains two items: (1) "A" and (2) "B with respect to C." *Stepnowski v. Comm'r,* 456 F.3d 320, 324 n. 7 (3d Cir.2006).

The rule of the last antecedent supports the plain meaning we discern in the section's wording. Under the rule, the phrase "delivered in a like manner" would be deemed to apply to the immediately preceding phrase "such other addresses as any party hereto may, from time to time, designate in writing."It would not be read to leap backward and modify the plainly-stated options of giving notice by certified or registered mail. *Stewman Ranch, Inc.,* 192 S.W.3d at 812 ("relative and qualifying phrases are to be applied to the words or phrases immediately preceding them....").

Woody makes a passing alternative claim that the notice provision of the sublease is ambiguous. If a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.*Webster,* 128 S.W.3d at 229. Aside from whether Woody properly may raise ambiguity for the first time on appeal, our conclusion the provision's plain language, supported by an applicable rule of construction, lends itself to only one reasonable reading requires us also to conclude it is not ambiguous.

Woody makes brief reference to its motion for partial summary judgment seeking holdover rent. But this argument depends on a finding that J. Black's did not provide timely notice of its intention to carry the sublease into the first option period. Absent such a finding, the argument also is without merit.

Finding the trial court was correct to conclude J. Black's gave timely notice of its intention to extend the term of the sublease, we overrule Woody's first, second and third issues.

**Specific Performance**

**\*5** Woody argues by its fourth issue that the trial court erred in decreeing specific performance in favor of J. Black's and

awarding J. Black's attorney's fees. In subpart (C) of the issue, Woody specifically contends J. Black's failed to prove it was ready, willing and able to perform the first option term of the sublease.[3]

[3]     The nub of the question concerns extending the sublease into the first option period, that is from August 31, 2009, through August 31, 2012. But before briefing was completed on appeal, the first option period had expired. The issue whether the trial court's decree of specific performance was correct might thus be moot. *See United Coin Meter Co. v. Johnson–Campbell Lumber Co.,* 493 S.W.2d 882, 890–91 (Tex.Civ.App.-Fort Worth 1973, no writ) (appellate challenge of trial court's refusal to order specific performance of lease dismissed as moot because secondary term of lease expired while case was on appeal). But, because J. Black's award of attorney's fees is contested on appeal, and depends on the viability of the trial court's decree of specific performance, the issue is not moot. *See Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642–43 (Tex.2005) (appellee's remaining issue in recovering attorney's precluded application of mootness doctrine).

J. Black's obtained its decree of specific performance through its third motion for partial summary judgment. As to this remedy, the final judgment says only, "Specific Performance of the Sublease is equitable and necessary to afford [J. Black's] sufficient relief[.]" From its pleading, it appears the performance J. Black's sought was of "the terms related to the extension of the term of the Sublease" although in its brief it tells us the judgment of the trial court requires "Woody to treat J. Black's as a tenant in good standing, allow it to peacefully exist in the subleased space pursuant to the terms of the Sublease as executed, and not continuously demand holdover rent at an increased rate."

The equitable remedy of specific performance operates to compel a party violating a duty under a valid contract to comply with its obligations. *S. Plains Switching, Ltd. v. BNSF Ry.,* 255 S.W.3d 690, 703 (Tex.App.-Amarillo 2008, pet. denied). The rationale is, when the recovery of monetary damages is inadequate to compensate the complainant the transgressor is compelled to perform the promise of its contract. *Id.* (citing *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 225 (Tex.Civ.App.-San Antonio 1980, writ ref'd n.r.e.)).

To obtain specific performance, a party must, among other things, plead and prove it was ready, willing and able to timely perform its obligations under the contract. *DiGiuseppe v. Lawler,* 269 S.W.3d 588, 593 (Tex.2008). This means even though a defendant refuses to perform its contractual obligations, a plaintiff must show it could have performed its contractual obligations.*Id.* (citing *Corzelius v. Oliver,* 148 Tex. 76, 220 S.W.2d 632, 635 (1949))."[T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter."*Id.* (quoting 25 Richard A. Lord, Williston on Contracts § 67:15, at 236–37 (4th ed.2002) (citations omitted)); *Henry S. Miller Co. v. Stephens,* 587 S.W.2d 491, 492 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.) (noting a party seeking specific performance must at all times remain ready, willing and able to perform its contractual responsibilities according to the terms of the contract). Even in the face of repudiation of the contract by the defendant, a plaintiff seeking specific performance must demonstrate its own readiness, willingness and ability to perform on the date set by the contract if specific performance is to be decreed. *DiGiuseppe,* 269 S.W.3d at 593 (quoting Edward Yorio, Contract Enforcement: Specific Performance and Injunctions § 6.4, at 144–45 (1989) (citation omitted)); *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947) (where the plaintiff's performance is excused, the plaintiff "ordinarily is entitled to specific performance where he alleges and proves that he ... is ready, able, and willing to perform").*But cf. Jarvis v. Peltier,* No. 12–12–00180–CV, 2013 Tex.App. Lexis 5017, at * 20, 2013 WL 1755797 (Tex.App.-Tyler Apr. 24, 2013, n.p.h.) (citing *Burford,* 199 S.W.2d at 145, for rule it is enough on a seller's breach for a purchaser to merely plead readiness, willingness and ability to perform but also noting movant for summary judgment in that case stated his readiness, willingness and ability to perform in his summary judgment affidavit).

**\*6** Here the primary term of J. Black's sublease expired on August 31, 2009. But the agreement afforded the sublessee an optional extension of the term. To do so, J. Black's was obligated to give timely notice of its intention to carry the sublease into the option term and be free of default under the sublease. While we have found J. Black's gave notice within the specified period, the question here is more focused, asking whether J. Black's summary judgment evidence conclusively establishes it was ready, willing and able to perform its obligations under the sublease.

Whether conclusive proof of J. Black's readiness, willingness and ability to perform its obligations under the sublease could be marshaled we do not say. Rather, this summary judgment record simply does not contain conclusive proof. We therefore sustain Woody's fourth issue, subpart (C). Our review of Woody's remaining arguments challenging the decree of specific

performance is unnecessary to the disposition of this appeal. Tex.R.App. P. 47.1.

**Attorney's Fees**

The judgment awards J. Black's "attorney's fees under the terms of the parties' contract and under Tex. Civ. Prac. & Rem.Code § 38.001."We begin by noting, and J. Black's does not contend otherwise, the sublease does not provide a recovery of attorney's fees for a prevailing party. Nor do the parties treat the master lease as a source for such relief.[4]

[4]     The master lease provides a prevailing signatory may recover attorney's fees in a "legal proceeding" brought against another signatory. J. Black's is not a signatory of the master lease.

Thus J. Black's recovery of attorney's fees depends on the provision of Civil Practice and Remedies Code section 38.001(8) which authorizes recovery of such fees to a party asserting a "valid claim" on a written contract.Tex. Civ. Prac. & Rem.Code § 38.001(8) (West 2008). A valid claim under section 38.001(8) includes a claim for the recovery of monetary damages as well as any claim for which a party recovers "at least something of value." *Albataineh v. Eshtehardi,* No. 01–12–00671–CV, 2013 Tex.App. Lexis 5406, at *3–4, 2013 WL 1858864 (Tex.App.-Houston [1st Dist.] May 2, 2013, no pet.). An injunction enforcing specific performance of a contract is something of value.*Id.*

Citing *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 391 (Tex.1997), Woody argues J. Black's is not entitled to recover attorney's fees under § 38.001 because it was not awarded monetary damages. There the plaintiff sought but did not recover damages for breach of a subcontract. *Id.* But in the present matter J. Black's was not denied monetary damages for breach of the sublease. Instead it sought an equitable decree. *Solis* is inapposite.

Nonetheless J. Black's is not entitled to recover attorney's fees under section 38.001(8) since it did not present conclusive proof entitling it to a summary judgment decreeing specific performance. *See Roundville Partners, L.L.C. v. Jones,* 118 S.W.3d 73, 82 (Tex.App.-Austin 2003, pet. denied) (when a purchaser is denied specific performance it may not recover attorney's fees under section 38.001 as it is not a prevailing party).

**\*7** We sustain Woody's fourth issue, subparts (G) and (H). Having found the trial court erred by decreeing specific performance as a matter of law and awarding J. Black's attorney's fees under section 38.001(8), we need not address Woody's remaining subissues under its fourth issue. Tex.R.App. P. 47.1.

**Sanctions**

By their fifth issue, Woody and his counsel Cardenas contend the trial court abused its discretion by imposing a monetary sanction on them under Rule 13[5] and Chapter 10.[6]

[5]     Tex.R. Civ. P. 13.

[6]     Tex. Civ. Prac. & Rem.Code Ann. §§ 10.001–.005 (West 2002).

Woody filed a motion for partial summary judgment on November 11, 2011, which J. Black's charged in a response and motion for sanctions merely rehashed issues previously resolved by partial summary judgment. Particularly, according to J. Black's, Woody's:

> Motion asserts untimely affirmative defenses, recycles briefing that Judges Triana, Rose and Dietz have already found unpersuasive, and seeks judgment on claims that have long-since been resolved in J. Black's favor in prior summary judgment proceedings. The Motion was filed purely for purposes of

harassment and to drive up the cost to J. Black's of obtaining a final resolution of this case.

The trial court denied Woody relief on its motion for summary judgment and signed an order imposing a monetary sanction of $6,958 against Woody and Cardenas. The court found Woody's motion for summary judgment "was filed in violation of Texas Rule of Civil Procedure Rule 13 and Texas Civil Practice and Remedies Code section 10.001, and was filed by [Woody] and their counsel to harass [J. Black's] and to cause unnecessary delay, and that [Woody's] Motion for Summary Judgment has caused a needless increase in the cost of litigation."In a handwritten finding the court added, "In addition the motion sought rulings that would be contrary to prior rulings of the court, by two different District Judges, and was not presented to them as a motion to reconsider."

Rule 13 provides sanctions for a party filing a pleading that is groundless and brought in bad faith or groundless and brought to harass. Tex.R. Civ. P. 13. A party seeking the imposition of sanctions under Chapter 10 must demonstrate the pleading or motion was brought for an improper purpose, there were no grounds for the legal arguments advanced, or the factual allegations or denials lacked evidentiary support. *Armstrong v. Collin County Bail Bond Bd.,* 233 S.W.3d 57, 62 (Tex.App.-Dallas 2007, no pet.); Tex. Civ. Prac. & Rem.Code Ann. § 10.001 (West 2002).

Our review of a trial court's order imposing sanctions under Rule 13 and Chapter 10 is for abuse of discretion. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007). A trial court abuses its discretion if it acts without regard to guiding rules and principles of law, such that its ruling is arbitrary or unreasonable. *Id.* The legal sufficiency of evidence heard by a trial court is a relevant factor in assessing whether it abused its discretion in imposing sanctions. *Armstrong,* 233 S.W.3d at 62 (citing *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991)). As fact finder, the trial court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Wein v. Sherman,* 03–10–00499–CV, 2013 Tex.App. Lexis 10666, at *24, 2013 WL 4516013 (Tex.App.-Austin Aug. 23, 2013, n.p.h.) (mem.op.) (citing *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 412 (Tex.App.-Houston [1st Dist.] 2005, pet. denied)).

**\*8** Concerning the imposition of a sanction under Rule 13 and Chapter 10, Woody and Cardenas argue the trial court abused its discretion by not conducting an evidentiary hearing to consider their subjective state of mind. For the purposes of Chapter 10 and Rule 13, courts presume pleadings, motions, and other papers are filed in good faith. *Thottumkal v. McDougal,* 251 S.W.3d 715, 718 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (adopting the same presumption when reviewing a sanctions award under Chapter 10). The party moving for sanctions bears the burden of overcoming this presumption.*Canada v. Canada,* 02–11–00483–CV, 2013 Tex.App. Lexis 5138, at *21–22, 2013 WL 1759894 (Tex.App.-Fort Worth Apr. 25, 2013, n.p.h.) (mem.op.) (citing *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex.1993) (orig.proceeding)).

Woody's motion for summary judgment and J. Black's motion for sanctions were heard on November 21, 2011, apparently in the course of a single hearing. But the appellate record does not contain a reporter's record of that November 21 hearing. The reporter's record of a hearing conducted in January 2012 reflects a comment by the trial court referring to an event that occurred at "the sanctions hearing." We thus infer the trial court considered the proceedings that occurred on November 21 fit that description.

J. Black's argues that because the appellate record does not include a reporter's record of a sanctions hearing we must presume the court heard evidence sufficient to support the sanctions award. In this case, we disagree. While J. Black's attached affidavit evidence to its motion for sanctions and the trial court's order recites it considered evidence, neither party asserts the court received evidence at the November 21, 2011 hearing, nor do we find other indication in the record of an evidentiary "sanctions hearing." In this circumstance, we must limit our evaluation of the evidence supporting the sanctions award to that appended to J. Black's motion.[7]*See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 783 (Tex.2005) (only when proceedings indicate an evidentiary hearing was held must complaining party present a record of that hearing to establish harmful error).

---

[7]     J. Black's contends the trial court could have taken judicial notice of the contents of its file. According to the record of the January 2012 hearing, the trial court took judicial notice "of the entire file" for determination of a matter other than the imposition of sanctions. Otherwise, J. Black's does not point to an indication in the record of judicial notice taken for establishing sanctionable conduct, nor does it explain how even the entire contents of the clerk's record would have met the evidentiary requirements to support sanctions.

While J. Black's motion showed Woody's October 2011 motion for summary judgment asserted grounds addressed by prior interlocutory orders, its evidentiary content did not demonstrate the subjective intent of the movant Woody or his attorney Cardenas. *See, e.g., Zeifman v. Nowlin,* 322 S.W.3d 804, 810–11 (Tex.App.-Austin 2010, no pet.)(outlining evidence supporting sanctions under Rule 13).[8] We must conclude the trial court acted without evidence supporting the assessment of a sanction under Rule 13 or Chapter 10 against Woody and Cardenas, and thus abused its discretion by doing so. *See Armstrong,* 233 S.W.3d at 62. We sustain Woody's fifth issue.

[8]    The Austin Court of Appeals, in whose district this case originated, has held that "awards of attorney's fees under the Civil Practice and Remedies Code require essentially the same findings as does rule 13."*Zeifman v. Michels,* No. 03–12–00114–CV, 2013 Tex.App. Lexis 10523, at *30, 2013 WL 4516082 (Tex.App.-Austin Aug. 22, 2013, n.p.h.) (mem.op.) (citing *Lake Travis Indep. Sch. Dist. v. Lovelace,* 243 S.W.3d 244, 256 (Tex.App.-Austin 2007, no pet.)).

**Conclusion**

The trial court correctly found that J. Black's gave timely notice of its intention to carry the sublease into the first option period. The court erred, however, in finding evidence J. Black offered in support of its claim for specific performance of the sublease to be conclusive. The award of attorney's fees predicated on Civil Practice and Remedies Code section 38.001 was also error. Finally, the trial court abused its discretion by imposing a sanction on Cardenas and Woody under Rule 13 and Chapter 10. We therefore affirm the judgment of the trial court in part and otherwise reverse the judgment and remand the case for further proceedings consistent with this opinion.

Pirtle, J., concurs as to the disposition of Issues One through Four, but dissents as to the disposition of Issue Five, without opinion.

**All Citations**

Not Reported in S.W.3d, 2013 WL 5744359

**End of Document**                                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Tab Two

Filed in The District Court
of Travis County, Texas

MAR 3 1 2015

At ___4:10___ O M.

Velva L. Price, District Clerk

CAUSE NO. D-1-GN-09-001436

| | | |
|---|---|---|
| BOB E. WOODY | § | IN THE DISTRICT COURT OF |
| *Plaintiff/Counter-Defendant* | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, T E X A S |
| | § | |
| J. BLACK'S, L.P. AND | § | |
| J. BLACK'S, G.P. L.L.C., | § | |
| *Defendants/Counter-Plaintiffs* | § | 345TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On January 12, 2012, this Court signed a Final Judgment in this Cause. On October 18, 2013, the Seventh Judicial District Court of Appeals, in Cause No. 07-12-00192, 2013 WL 5744359 (Tex. App.-Amarillo Oct. 18, 2013, pet. denied) (mem. op., not designated for publication), issued its opinion affirming the January 12, 2012 Final Judgment in part, but reversing and remanding to this Court the issues of the award of specific performance and attorney's fees. The Court of Appeal's mandate to this Court was filed with the District Clerk of Travis County on _ April 29, 2014.

On March 11, 2015, this Court signed its Order on Motions for Summary Judgment, Objections and Attendant Motions the (the "March Summary Judgment Order"), by which the Court, inter alia, GRANTED Defendants/Counter-Plaintiffs' Motion for Final Summary Judgment in PART, excluding only the amount of attorney's fees, and DENIED Plaintiffs/Counter-Defendants' Bob E. Woody and The Ranch, LLC's Motion for Summary Judgment.

On the 25th day of March, 2015, the case was called for trial on the remaining issue of attorney's fees. Plaintiff/Counter-Defendant Bob E. Woody ("Woody") and Defendants/Counter-Plaintiffs J. Black's, L.P. and J. Black's, G.P., LLC (collectively, "J.Black's") appeared through

7440-02/00486614.001.DOCX          1




their respective attorneys and announced ready for trial. Before trial, the Court signed an Order vacating the March Summary Judgment Order as to The Ranch, LLC only, and also signed an Order Granting the Joint Notice of Non-Suit with prejudice as to The Ranch, LLC.

The Court, having granted J. Black's Motion for Final Summary Judgment in part as to its entitlement to specific performance, and having considered the evidence, the stipulation of the parties as to attorney's fees, and the arguments of counsel, hereby renders judgment for J.Black's against Woody, as follows:

It is ORDERED, ADJUDGED, and DECREED that:

1.     Woody shall specifically perform the entirety of his obligations under that certain Sublease Agreement dated August 21, 2006, as it has been extended and modified (the "Sublease");

2.     As the prevailing party, J. Black's is entitled to recover attorney's fees under TEX. CIV. PRAC. & REM. CODE §38.001;

3.     J. Black's shall recover $173,438.85 in attorney's fees from Woody for services rendered through the date of this judgment. In addition, J. Black's is conditionally awarded the following amounts of attorney's fees from Woody: (1) $20,000.00 in the event of an unsuccessful appeal by Woody to the Court of Appeals; (2) an additional $5,000.00 if a Petition for Review is filed by Woody, but not granted by the Texas Supreme Court, or if a petition for review is granted, an additional $15,000.00 if the Texas Supreme Court requires additional briefing, and Woody's appeal to the Texas Supreme Court is unsuccessful.

4.     J. Black's is awarded post-judgment interest at the rate of five percent per annum on the entire judgment from date of judgment until paid; and

5.     J.Black's is allowed such writs and processes as may be necessary in the enforcement and collection of this Final Judgment.

6.     All costs of court, not previously taxed by any Courts of Appeal, are taxed against Woody. Any amounts previously taxed and unpaid against J. Black's are offset against amounts taxed against Woody hereunder.

1653

All relief not granted by prior orders or herein is DENIED. This is a Final Judgment that disposes of all claims asserted and is appealable.

Signed this 31 day of MARCH , 2015.

_____
Hon. Stephen Yelenosky, District Judge

AGREED:

_____
Eric J. Taube
State Bar No. 19679350
Hohmann, Taube & Summers, LLP
100 Congress Ave., Suite 1800
Austin, Texas 78701
512 472 5997 – Phone
512 472 5248 – Fax
EricT@hts-law.com
ATTORNEYS FOR J. BLACK'S L.P.
AND J. BLACK'S G.P. L.L.C

AGREED AS TO FORM:

_____
Rick Gray
State Bar No. 0832800
Gray & Becker, PC
900 West Ave.
Austin, Texas 78701
512 482 0061 – Phone
512 482 0924 –Fax
Rick.Gray@graybecker.com

1654